[888 NYS2d 845]

Roger Corbin, Petitioner, v County of Nassau, Respondent.

Supreme Court, Nassau County, October 8, 2009

APPEARANCES OF COUNSEL

*David Bythewood*, Mineola, for petitioner. *Lorna Goodman*, *County Attorney*, Mineola, for respondent.

**OPINION OF THE COURT**

UTE W. LALLY, J.

This CPLR article 78 proceeding brought by petitioner, a duly elected legislator for the County of Nassau, for an order and judgment annulling section 6-26.0 (b) (3) (c) of the Nassau County Administrative Code, on the basis that same is in contravention of section 559 of the Real Property Tax Law, must be dismissed for the reasons set forth hereinafter.

On June 5, 1936, pursuant to chapter 879 of the Laws of 1936, the Alternative County Government Law was enacted into law by the New York State Legislature. In 1936, the voters of Nassau County adopted the terms of this legislation and as of January 1, 1938, what is commonly known as the Nassau County Charter came into effect. Thereafter, in 1939, via chapter 272 of the Laws of 1939, the legislature enacted the Nassau County Administrative Code as a supplement to the Nassau County Charter. Subsequently, pursuant to chapter 851 of the Laws of 1948, the Nassau County Administrative Code was amended by the state legislature, which provisions include what has come to be known as the "County Guaranty" and which is located at section 6-26.0 (b) (3) (c) of the Nassau County Administrative Code.

Nassau County Administrative Code (hereinafter NCAC) § 6-26.0 (b) (3) (c) provides the following:

> "Notwithstanding any provisions of this chapter, or any other general or special law to the contrary, any deficiency existing or hereafter arising from a decrease in an assessment or tax under subdivisions

one, four and seven of section 6-24.0, or sections 6-12.0 or 5-72.0 of the code or by reason of exemption or reductions of assessments shall be a county charge."

By way of background, throughout its over 60-year history, this section of the NCAC has been judicially interpreted to relieve school districts within Nassau County of any liability for tax refunds resulting from erroneous assessments made by Nassau County (*Matter of Bowery Sav. Bank v Board of Assessors*, 153 AD2d 679 [2d Dept 1989]; *Corporate Prop. Invs. v Board of Assessors of County of Nassau*, 153 AD2d 656 [2d Dept 1989]; *Matter of Coliseum Towers Assoc. v Livingston*, 153 AD2d 683 [2d Dept 1989]). In interpreting the NCAC, the Court of Appeals has stated that pursuant to the "unambiguous" language therein contained, Nassau County is liable for the payment of tax refunds and noted that such tax liability borne by Nassau County is "consistent with the statutory taxing scheme existing in Nassau County" whereby the "County Board of Assessors exclusively prepares the assessment rolls for State, county, town, special district and school taxes and, consistent with these responsibilities, the Legislature imposed responsibility for all taxing errors emanating from these assessment rolls solely upon the County" (*Matter of Bowery Sav. Bank v Board of Assessors of County of Nassau*, 80 NY2d 961, 964 [1992], citing Assembly Mem in Support, Bill Jacket, L 1948, ch 851, at 8-9).

In 1974 the Real Property Tax Law was amended by the New York State Legislature via chapter 177 of the Laws of 1974 (*see* intervenors-respondents' verified answer at exhibit C). These amendments added to the statutory scheme a new "Title 3" to article 5, and encompassed sections 550, 551, 552, 553, 554, 555, 556, 557, 558 and 559 (*see* intervenors-respondents' verified answer at exhibit C). Of particular relevance to the petitioner's arguments is Real Property Tax Law § 559 (1) and (2), which provide the following:

"1. No 'charter law,' as such term is defined in section thirty-two of the municipal home rule law, nor local law shall be adopted which is inconsistent with the provisions of this title.

"2. Provisions of all general, special, local or other laws which are inconsistent with the provisions of this title shall be inapplicable to municipal corporations to which this title applies but if not inconsistent shall apply to such municipal corporation."

In commencing the within proceeding, the central contention posited by the petitioner is that a conflict exists between section 6-26.0 (b) (3) (c) of the NCAC and the amended provisions of the RPTL, the effect of which renders the NCAC invalid in accordance with RPTL 559 (*see* verified petition ¶¶ 2, 3, 7; *see also* petitioner's mem of law in reply, point II). With particular regard to this alleged inconsistency, the petitioner contends that the existing provisions of the RPTL require towns, special districts and school districts to financially remunerate the County for any tax refunds the County has paid, yet under section 6-26.0 (b) (3) (c) of the NCAC, the County is not receiving the mandated reimbursement evidencing a clear inconsistency between these two sections of law (*id.* ¶ 7).

The petitioner additionally argues that the RPTL, as a state statute, is superior to the NCAC warranting annulment of the provisions therein contained, including the "County Guaranty" (*id.* ¶ 7; *see* petitioner's mem of law in reply at point II). Finally, the petitioner contends that the unambiguous language of the RPTL renders the NCAC illegal and clearly demonstrates that the legislature intended to annul section 6-26.0 (b) (3) (c) of the NCAC (*see* petitioner's mem of law in reply, points II, V; *see also* sur-surreply ¶ 5).

Within this proceeding there are several respondents, one of which is the County of Nassau, which given its status as a respondent, would typically be expected to take a position contrary to that espoused by the petitioner. However, in its verified answer, affirmative averments and points of law, the County of Nassau supports the efforts of the petitioner and similarly seeks a judgment declaring the "County Guaranty" unlawful.

Making particular reference to the 1974 amendments to the RPTL, the County characterizes said amendments as having been promulgated with the intent to "wipe the slate clean of existing state and special error correction law" (*see* verified answer, affirmative averments and points of law ¶¶ 5, 20; *see also* point I at 13). Specifically, the County posits that RPTL 556 (6) (a),[1] as added in 1974, mandates that school districts bear the financial responsibility for those costs attendant to their own refunds and as the NCAC, wherein the "County

---

1. RPTL 556 (6) (a) provides:
   "The amount of any tax refunded or credited pursuant to this section shall be a charge upon each municipal corporation or special district to the extent of any such municipal corporation or special district taxes that were so refunded. Amounts so charged

Guaranty" is contained, is inconsistent with the provisions of RPTL 556, it is accordingly invalid pursuant to the dictates of RPTL 559 (*id.* ¶¶ 4, 21).

Intervenors-Respondents/Amici Curiae[2]

Respondents, the Nassau-Suffolk School Boards Association, Rockville Centre Union Free School District and Plainview-Old Bethpage Central School District (hereinafter collectively referred to as the intervenors-respondents)[3] are joined by Verizon New York, Inc., Long Island Water Corporation and Keyspan Gas East Corporation, as amici curiae, in objecting to the relief requested by the petitioner. Initially, the intervenors-respondents contend that the legislative history underlying the passage of the 1974 amendments to the RPTL is completely devoid of any indication that the legislature intended to supercede preexisting law (*see* intervenors-respondents' verified answer ¶¶ 28, 29, 30). With particular respect to RPTL 556, these respondents assert that said section functioned to merely reenact the law as it existed at the time and did not serve to alter the tax refund provisions such as the "County Guaranty" as embodied in the NCAC (*id.* ¶¶ 43, 47). The respondents further posit that the validity of section 6-26.0 (b) (3) (c) of the NCAC has been more recently recognized by the state legislature in 1996, when that body again amended the RPTL to grant school districts intervenor status in tax certiorari proceedings and to prescribe the manner in which school superintendents were served in an RPTL article 7 proceeding (*id.* ¶¶ 55, 58, 59, 60, 66; *see also* exhibit E). The respondents argue that in passing said amendments, the legislature expressly exempted school districts within the county from both the service and intervenor provisions on the basis that such districts were recognized by the legislature as not bearing the financial responsibility for tax certiorari awards (*id.*).

The amici curiae adopt those objections forwarded by the intervenors-respondents and add thereto the additional argu-

---

to cities, towns and special districts shall be included in the next ensuing tax levy."

**2.** By short form order dated May 15, 2009, this court granted leave to Verizon New York, Inc., Long Island Water Corporation and Keyspan Gas East Corporation to file a brief as amici curiae.

**3.** The court notes that given the identical positions espoused by both petitioner Corbin and respondent County of Nassau, it was only upon this court granting intervenor status to the Nassau-Suffolk School Boards Association, Rockville Centre Union Free School District and Plainview-Old Bethpage Central School District that the within proceeding assumed the mantle of a justiciable controversy.

ment that Mr. Corbin, as a county legislator, lacks standing to bring the within proceeding as he has failed to state an injury-in-fact (*see* amicus curiae mem of law, points II, IV).

In consideration that standing is a threshold matter, where the absence of which is an inviolable impediment to bringing an action or proceeding, the court will initially address whether petitioner, Mr. Corbin, had the requisite standing to commence the within proceeding (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761 [1991]; *Gilman v Abagnale*, 235 AD2d 989 [3d Dept 1997]). To that end, while the court is cognizant of the submission by Mr. Corbin of a supplemental affidavit wherein he avers that he commenced the within proceeding "in all of my capacities," a careful reading of the original affidavit in support and the verified petition, in which he predicates his prayer for relief upon an opinion from the current County Attorney issued upon his own request as a legislator, it is evident that the instant proceeding was commenced by Mr. Corbin in his capacity as County Legislator.

■ In order to establish standing, it is incumbent upon a plaintiff or petitioner to demonstrate an "injury in fact" in that he or she will actually suffer harm from the challenged action, which in this case is the continued application of section 6-26.0 (b) (3) (c) of the NCAC (*New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207 [2004]). "The existence of an injury in fact—an actual legal stake in the matter being adjudicated—ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute 'in a form traditionally capable of judicial resolution' " (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772 [1991], *supra*, quoting *Schlesinger v Reservists Comm. to Stop the War*, 418 US 208, 220-221 [1974]). The injury alleged by a plaintiff or petitioner must be more than "conjectural" in nature and it is necessary for a petitioner to demonstrate that the injury asserted must fall within his or her "zone of interests" (*id.*; *see also Silver v Pataki*, 96 NY2d 532 [2001]).

Within the particularized context of legislator standing, the Court of Appeals has stated that "[c]ases considering legislator standing generally fall into one of three categories: lost political battles, nullification of votes and usurpation of power." (*Silver v Pataki*, 96 NY2d 532, 539 [2001], *supra*.) The Court of Appeals further stated that it was only circumstances attendant to the latter two categories of "nullification of votes" and "usurpation of power" that will bestow legislator standing (*id.*).

In the matter sub judice, this court finds that the petitioner has failed to allege an injury-in-fact sufficient to confer legislator standing (*id.*). Here, the type of injury alleged by Mr. Corbin is that the taxpayers of Nassau County would be encumbered by an unfair tax burden in the event that section 6-26.0 (b) (3) (c) of the NCAC was not annulled. However, such an alleged injury does not fall within the ambit of a legislator's "zone of interest" and clearly does not implicate either a "nullification of votes" or a "usurpation of power" (*id.*). Accordingly, based upon the petitioner's lack of standing, the within petition is hereby dismissed.

■ Notwithstanding the foregoing determination, the court will nonetheless address the merits of the matters herein raised. The narrow issue presented to this court is whether the RPTL, as amended in 1974, superceded and thus annulled the "County Guaranty" as embodied in section 6-26.0 (b) (3) (c) of the NCAC. Therefore, in rendering such a determination the court must examine the RPTL and the provisions therein contained. "The primary consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature' " (*Riley v County of Broome*, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177; *Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328 [2003]). As a general proposition, while statutory language which is clear and unambiguous is determinative of legislative intent, "the legislative history of an enactment may also be relevant and 'is not to be ignored, even if words be clear' " (*Riley v County of Broome*, 95 NY2d 455, 463 [2000], *supra*, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124, at 252). Thus, to properly divine the genuine intent of the legislature in promulgating the 1974 amendments to the RPTL, and giving due effect thereto, the court has considered both the language of the statute and the legislative history underlying the enactment thereof.

Having reviewed RPTL 556 (6) (a) and 559 (1) and (2), there is nothing in the language comprising either of these sections of law which expressly provides that upon passage thereof, section 6-26.0 (b) (3) (c) of the NCAC would be superceded or invalidated. Moreover, upon a careful reading of the Bill Jacket relevant to the 1974 amendments to the RPTL, section 556 "[was] limited to clerical errors relating to computation and extension to unlawful entry, and it is actually a substantial re-enactment of current section 556." (Mem of NY Dept of Audit and Control,

Bill Jacket, L 1974, ch 177, at 11.) Thus, as extrapolated directly from the legislative history, RPTL 556 was not intended to function so as to supercede or invalidate those laws in existence at the time of its adoption, which included the "County Guaranty," and was rather a reestablishment of those laws already in being (*id.*).

Finally, this court agrees with the assertion posited by both the intervenors-respondents and the amici curiae that in 1996 the state legislature reaffirmed its recognition of the continuing legal viability of the "County Guaranty." The court has carefully read the legislative history attendant to the passage of 1996 amendments to the RPTL as are contained in the Bill Jacket. Upon such review, it is revealed that the state legislature plainly recognized that school districts in the county were not financially responsible for tax certiorari refunds and on that very basis eliminated the requirement that such districts be served with process in an article 7 proceeding *and* further exempted said school districts from being granted intervenor status in tax certiorari proceedings (*see* Mem of NY Off of Real Prop Servs, Bill Jacket, L 1996, ch 503, at 12). Particularly illuminating and directly on point is the letter authored by the bill's sponsor who stated "Nassau and Suffolk school districts have been exempted from the intervenor status provisions altogether since school districts in these counties are not responsible for tax certiorari awards." (*See* Letter of Senator Joseph R. Holland to Michael C. Finnegan, Counsel to the Governor, Bill Jacket, L 1996, ch 503, at 7.)

Therefore, based upon the foregoing the within petition shall be dismissed in its entirety.